UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALONZO JOSEPH,<br><br>Plaintiff,<br><br>v.<br><br>FAYE MONTEGRANDE,<br><br>Defendant. | Case No. 22-cv-03576-PCP<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION TO BE REFERRED TO MEDIATION**<br><br>Re: Dkt. Nos. 62, 66 |

Alonzo Joseph, a California prisoner proceeding *pro se*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Mr. Joseph alleges that defendant Dr. Faye Montegrande was deliberately indifferent to Mr. Joseph's serious medical needs by failing to treat his infection with hepatitis-C ("hep-C").

Defendant has moved for summary judgment. Dkt. No. 62 ("MSJ"). Mr. Joseph filed an opposition (Dkt. No. 63, "Opposition"), and also moved for this case to be referred to mediation (Dkt. No. 66). Defendant opposes the request to be referred to mediation because she believes her summary judgment motion is dispositive as to all claims. Dkt. No. 67.

For the reasons stated below, Defendant's motion for summary judgment is **GRANTED**. Because this motion is dispositive as to all claims, Mr. Joseph's motion to be referred to mediation is **DENIED**.

### BACKGROUND

The following facts are undisputed unless otherwise indicated.

Mr. Joseph had a history of hep-C infection and treatment dating from at least 2018. Dkt. No. 62-3 at AGO-0005. He also experienced liver cirrhosis. *See id.*

At the beginning of 2020, Mr. Joseph was housed at California State Prison, Corcoran ("CSP"). *See id*. at AGO-0004. As of January 7, 2020, Mr. Joseph's primary care physician at CSP was non-defendant Dr. McConnell. *See id*. On that date, Dr. McConnell noted that Mr. Joseph maintained a "nondetectable viral load" for hep-C. *Id.* Dr. McConnell stated that Mr. Joseph's liver cirrhosis was "stable and asymptomatic," and that Mr. Joseph was scheduled to receive twice-yearly ultrasounds of his liver. *See id*. at AGO-0007. On March 24, 2020, Mr. Joseph received such an ultrasound which "confirmed a clinical indication of cirrhosis, but was otherwise unremarkable." Dkt. No. 62-5 ("Montegrande Declaration") ¶ 9. On April 30, 2020, Mr. Joseph was tested for hep-C, with test results indicating that he was reactive to the hep-C antibody and thus may have had an active infection. *See* Dkt. No. 62-3 at AGO-0017–18. Mr. Joseph received a second test to determine whether he had a detectable viral load, and the results showed that he maintained an undetectable viral load. *See id*. at AGO-0007, AGO-0011–16, AGO-0019–22.

On June 1, 2020, Mr. Joseph was screened before being transferred out of CSP. *See id.* at AGO-0024. The pre-transfer screening was conducted by non-defendant Nurse Alvarado. *See id*. The pre-transfer screening notes did not state that Mr. Joseph had an active hep-C infection. *See id*. at AGO-0024–31. A transfer email similarly did not mention that Mr. Joseph had an active hep-C infection. *See id*. at AGO-0032.

On June 1, 2020, Mr. Joseph was transferred to Salinas Valley State Prison ("SVSP"). *See* Dkt. No. 62-5 ("Montegrande Declaration") ¶ 13. His first medical appointment at SVSP was with non-defendant Dr. Paredes on June 8, 2020. *See* Dkt. No. 62-3 at AGO-0033–36. Although Dr. Paredes noted that Mr. Joseph had a "history of cirrhosis" and a "history of hepatitis C," "[Mr. Joseph] did not report, and Dr. Paredes did not note [that] [Mr. Joseph] was experiencing any symptoms indicative of an active hepatitis C infection." Montegrande Decl. ¶ 14; *see also* Dkt. No. 62-3 at AGO-0033–36.

Dr. Paredes conducted a follow-up appointment with Mr. Joseph on August 4, 2020. *See id.* at AGO-0041–46. Mr. Joseph did not report, and Dr. Paredes did not note, any symptoms that would indicate an active hep-C infection. *See id*. "[T]here was no clinical evidence to suggest that

[Mr. Joseph] had an active hepatitis C infection at this time or that his liver cirrhosis had progressed." Montegrande Decl. ¶ 16.

Between August 4 and September 27, 2020, Mr. Joseph obtained a forehead tattoo. *See* Dkt. No. 62-3 at AGO-0049. This is "a primary way in which people are re-infected with hepatitis C following treatment." Montegrande Decl. ¶ 17. On September 27, 2020, Mr. Joseph requested to be re-tested for hep-C. *See* Dkt. No. 62-3 at AGO-0049. Although Mr. Joseph was not due to be re-tested until April 2021, his request was granted and he was re-tested. Montegrande Decl. ¶ 17. Non-defendant Dr. Gamboa became Mr. Joseph's primary care physician and ordered the re-testing. *See* Dkt. No. 62-3 at AGO-0051–52. The testing showed that Mr. Joseph was reactive to the hep-C antibody, so Mr. Joseph received a second test to determine his viral load. Montegrande Decl. ¶ 17. The second test indicated that Mr. Joseph had a low viral load, approximately one-tenth of the viral load that would have required intervention. *See id*.

On October 23, 2020, Mr. Joseph had a follow-up appointment with Dr. Gamboa. *See* Dkt. No. 62-3 at AGO-0055–0056. The notes from that appointment indicate that Mr. Joseph used intravenous drugs, and that Mr. Joseph wanted to receive treatment for his drug addiction "before starting treatment for hep C infection." *Id*. at AGO-0056. Defendant Montegrande explains that the decision reached by Dr. Gamboa and Mr. Joseph, to treat Mr. Joseph's drug addiction before treating his hep-C infection, "was medically sound" because continued intravenous drug use risked continuous reinfection. *See* Montegrande Decl. ¶ 22. Because Mr. Joseph's viral load was low enough not to require immediate intervention, his liver ultrasounds showed "no . . . suspicious findings," and Mr. Joseph "himself wished to pursue drug treatment," the decision reached by Mr. Joseph and Dr. Gamboa was "clinically appropriate." *Id*.

Dr. Gamboa had three follow-up appointments with Mr. Joseph after the initial decision on a treatment plan. *See* Dkt. No. 62-3 at AGO-0088–0095. Mr. Joseph did not communicate a wish to alter the treatment plan in any of these appointments. *See id*. Mr. Joseph's "hepatitis C reinfection and cirrhosis remained stable" throughout this time. *See* Montegrande Decl. ¶ 14 (summarizing medical notes).

3

Defendant Montegrande did not meet with Mr. Joseph until July 1, 2021, at which point Mr. Joseph had been following Dr. Gamboa's treatment plan for eight months. *See* Montegrande Decl. ¶ 25. In that appointment, defendant Montegrande observed indications of recent intravenous drug use. *See id*. In a follow-up appointment on July 13, 2021, Mr. Joseph "admit[ted] to intravenous drug use." Dkt. No. 62-3 at AGO-0103. Defendant Montegrande concluded that the treatment plan reached by Dr. Gamboa and Mr. Joseph remained clinically sound, given Mr. Joseph's low viral loads, stable cirrhosis, and continued drug use. *See* Montegrande Decl. ¶ 26.

On October 4, 2021, defendant Montegrande again saw Mr. Joseph. *See id*. at ¶ 27. Mr. Joseph reported swelling in his legs. *See* Dkt. No. 62-3 at AGO-0107. On October 11, 2021, defendant Montegrande ordered a test of Mr. Joseph's liver function. *See id*. at AGO-0111. The test "indicated that [Mr. Joseph's] liver function was abnormal." Montegrande Decl. ¶ 28. Defendant Montegrande notified Mr. Joseph of the test results on October 13, 2021, and also notified him that a "chronic care appointment" had been scheduled in light of the test results. *See id*.; *see also* Dkt. No. 62-3 at AGO-0113–0114 (containing defendant Montegrande's letter stating that a chronic care appointment had been set up). On October 15, 2021, defendant Montegrande ceased working at SVSP after a personal bereavement. *See* Montegrande Decl. ¶ 29.

On November 8, 2021, Mr. Joseph had the scheduled "focused follow-up appointment regarding elevated liver function tests" with Dr. Ladd. Dkt. No. 62-3 at AGO-0115. Mr. Joseph stated he would like to receive treatment for his hep-C infection. *See id*. Dr. Ladd noted that "several additional prescreening tests" were required before Mr. Joseph could begin treatment for his hep-C infection. *Id*. at AGO-0116. The tests showed a low viral load, and Mr. Joseph did not receive treatment during the following year. *See* Montegrande Decl. ¶ 30 (summarizing medical records).

On November 15, 2022, Mr. Joseph met with non-defendant Dr. Hashemi for evaluation for treatment for his hep-C infection. Dkt. No. 62-3 at AGO-0136. Mr. Joseph began treatment for his hep-C infection starting November 22, 2022, and achieved negative status for that infection. *Id*. at AGO-0133, AGO-0135.

**PROCEDURAL HISTORY**

Mr. Joseph filed this lawsuit on or after May 16, 2922. *See* Compl. at 5 (signing the Complaint on that date). He initially sued defendant Montegrande and Dr. Ladd. *See id*. at 1.

United States District Judge Jon Tigar screened Mr. Joseph's Complaint pursuant to 28 U.S.C. § 1915A. Dkt. No. 6. District Judge Tigar noted that Mr. Joseph had attached 78 pages of exhibits to his Complaint, and that the exhibits showed Mr. Joseph could not state a cognizable claim against Dr. Ladd. *See id*. at 3, 4. District Judge Tigar dismissed Dr. Ladd from this action with prejudice. *See id*. at 5. District Judge Tigar dismissed Mr. Joseph's claims against defendant Montegrande but gave Mr. Joseph leave to amend his Eighth Amendment claim regarding hep-C treatment. *See id*. at 5–6. The action subsequently was reassigned to United States District Judge Thompson. Dkt. No. 8.

Mr. Joseph filed an amended complaint. Dkt. No. 9. District Judge Thompson found the following claim cognizable:

> Plaintiff's FAC alleges that defendant Montegrande ordered labs for plaintiff which were collected on October 11, 2021 and ultimately demonstrated that plaintiff had hepatitis C. ECF 9 at 3. Plaintiff states that defendant "at no time . . . refer[red] plaintiff to, or suggest[ed] any treatment" and left him in severe pain and suffering including from gastroenteritis and cirrhosis. *Id.* He alleges that defendant continues to refuse to see him or refer him to a hepatitis C doctor, and generally deprives him of hepatitis C treatment. He states he has received no hepatitis C treatment since 2018 and he seeks injunctive relief in the form of treatment. *Id.*
>
> The documents plaintiff submitted with his original complaint indicated that, as of October 2021, plaintiff was awaiting a scheduled ultrasound of his liver, as well as a scheduled appointment with his primary care provider (PCP) to discuss his treatment plan. ECF 1-1 at 13. As of December 2021, plaintiff told his PCP that he wanted to receive hepatitis C treatment but was informed that "further prescreening testing had to be completed before a request for treatment could be completed." *Id.* at 16. Diagnostic testing was completed on November 15, 2021, and plaintiff had a pending follow-up appointment. *Id.* Plaintiff was also informed that "[d]ue to the significant number of patients eligible for hepatitis C treatment, patients at highest risk for complication or death if they remain untreated will be prioritized to receive treatment first." *Id.* Plaintiff has adequately alleged that defendant Montegrande is aware that he

5

> has hepatitis C and is seeking treatment, but he has not received it. Whether defendant is shielded from liability by the California Correctional Health Care Services' treatment prioritization and exclusion criteria for hepatitis C is a question for a later stage of the case.
>
> Liberally construed, the Court finds that plaintiff has stated a cognizable Eighth Amendment claim against defendant Montegrande for failure to treat his hepatitis C.

Dkt. No. 12 at 2–3. The action was subsequently reassigned to the undersigned. Dkt. No. 17.

Before defendant Montegrande filed the pending summary judgment motion, Mr. Joseph asked for this case to be referred to early settlement proceedings. Dkt. No. 43. This request was granted, but the parties did not reach a settlement agreement. Dkt. Nos. 44, 47.

Defendant Montegrande moved for summary judgment. Dkt. No. 62 ("MSJ"). Mr. Joseph filed an opposition, Dkt. No. 63 ("Opposition"), and also moved for this case to be referred to mediation, Dkt. No. 66, which defendant Montegrande opposes, Dkt. No. 67.

## LEGAL STANDARDS

### I.     Summary judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a typical summary judgment motion, a defendant moves for judgment against a plaintiff on the merits of his claim. In such a situation, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine dispute of

United States District Court
Northern District of California

6

material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See id.* at 631.

## II.    Deliberate indifference to serious medical needs

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). A prison official is deliberately indifferent if he knows a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060.

A claim of medical malpractice or negligence is insufficient to establish a violation of the Eighth Amendment. *Id.* at 1059. It is well-settled that a difference of opinion between a prisoner-patient and prison medical authorities regarding proper treatment does not amount to deliberate

United States District Court
Northern District of California

7

indifference. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).[1] Rather, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, such treatment was chosen in conscious disregard of an excessive risk to the plaintiff's health, and the choice resulted in harm to the plaintiff. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

**ANALYSIS**

Defendant Montegrande argues that she did not exhibit deliberate indifference to Mr. Joseph's medical needs. *See generally* MSJ. The Court views the facts in the light most favorable to Mr. Joseph, the non-moving party. Even when viewed in this light, there is no evidence that defendant Montegrande was deliberately indifferent to Mr. Joseph's medical needs.

As explained above, the decision to treat Mr. Joseph's drug addiction before treating his hep-C infection was agreed upon between Mr. Joseph and non-defendant Dr. Gamboa. *See* Dkt. No. 62-3 at AGO-0055–0056, AGO-0088–0095. Mr. Joseph was willing to follow this course of treatment for eight months before ever meeting defendant Montegrande. *See id*. Even after Mr. Joseph met with defendant Montegrande, his medical records do not indicate that he expressed a wish to alter his treatment. *See generally* Dkt. No. 62-3. Although Mr. Joseph submitted an administrative grievance on August 3, 2021, in which he stated he would like to be "refer[ed] to a hep-C doctor," there is no indication that this grievance was ever seen by defendant Montegrande. *See* Opp. & Exs. There simply is no indication that defendant Montegrande even knew Mr. Joseph wanted to alter the course of treatment he and non-defendant Dr. Gamboa had agreed upon.

Once Mr. Joseph presented symptoms suggesting his liver function had altered, defendant Montegrande acted promptly to address the concern. Mr. Joseph reported swelling in his legs on October 4, 2021. Dkt. No. 62-3 at AGO-0107. He received a test of his liver function within a

---

[1] *See also Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) (holding that a difference of opinion between the physician and the prisoner concerning the appropriate course of treatment does not amount to deliberate indifference to serious medical needs); *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (same); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (holding that a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference); *Sanchez v. Vild*, 891 F.2d 240, 241–42 (9th Cir. 1989) (same).

United States District Court
Northern District of California

week, was promptly notified of the results, and was scheduled for follow-up care. *See id*. at AGO-0111–0114. There is no indication that defendant Montegrande was dilatory in requesting follow-up care for Mr. Joseph; although defendant Montegrande left SVSP due to a personal bereavement, Mr. Joseph received a follow-up appointment by November 8, 2021. *See id*. at AGO-0115. The facts show that, far from being deliberately indifferent to Mr. Joseph's medical needs, defendant Montegrande acted promptly when she became aware of that need.

Even if defendant Montegrande had been aware of Mr. Joseph's wish to pursue treatment for his hep-C infection, Mr. Joseph has at most shown a difference of opinion with his medical providers. *See Franklin*, 662 F.2d at 1344. Mr. Joseph has not shown that the course of treatment adopted was medically unacceptable under the circumstances. *See Jackson*, 90 F.3d at 332. Rather, the fact that the treatment was agreed upon and pursued by Mr. Joseph and non-defendant Dr. Gamboa for eight months before defendant Montegrande ever met with Mr. Joseph and was continued by Dr. Ladd for a year after defendant Montegrande ceased treating Mr. Joseph, necessarily means that this treatment was acceptable to other medical professionals. Mr. Joseph has not produced any expert opinion suggesting the course of treatment was improper. *See Griffin v. Gregoline*, 727 F. App'x 397, 398 (9th Cir. 2018) ("The district court properly granted summary judgment [to defendant] … because [plaintiff] failed to introduce expert testimony and therefore failed to establish a genuine dispute of material fact…."). Without testimony that this treatment was unacceptable, it is undisputed that defendant Montegrande acted within the standard of care. Mr. Joseph thus fails to carry his burden.

In sum, Mr. Joseph has not shown that defendant Montegrande pursued a medically unacceptable course of treatment, and defendant Montegrande has introduced evidence that the treatment was medically acceptable. Because there is no evidence that defendant Montegrande was deliberately indifferent to Mr. Joseph's medical needs or pursued medically unacceptable treatment posing a risk to Mr. Joseph's health, his Eighth Amendment claims fail. *See Toguchi*, 391 F.3d at 1058.

## CONCLUSION

Defendant's motion for summary judgment is **GRANTED** and Mr. Joseph's Eighth

United States District Court
Northern District of California

9

Amendment claim against defendant Montegrande is dismissed with prejudice. Because defendant's motion is dispositive as to all claims, there is nothing to refer to mediation. Accordingly, Mr. Joseph's motion to be referred to mediation is **DENIED**.

The Clerk shall terminate all pending motions and close the file.

**IT IS SO ORDERED.**

Dated: March 18, 2026

_____

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California

10